### 4411. JACKSON v. THE STATE.

1. The act approved August 12, 1910 (Ga. Laws, 1910, p. 134), entitled "An act to prohibit any person from having or carrying about his person . . any pistol or revolver without first having obtained a license from the ordinary," etc., should receive a reasonable construction, in accord with the purpose of the legislature in enacting it.
2. The statute in question was not intended to prevent the manual possession of a pistol for such a length of time as is necessary to examine it with a view to its purchase, nor to penalize the act of one who, having the pistol in his hand- for no other purpose than that of examination, might be temporarily called aside by some one wishing to speak to him. The terms implied in the statute involve the idea of a duration, for some appreciable time at least, of the possession of a pistol, and the kindred idea that this possession is with the intent and purpose of carrying the weapon to some other place than that at which the manual possession began.
3. A conviction of one accused of a violation of the statute forbidding the carrying of pistols without a license is unauthorized, where it appears that his possession was of the character stated in the foregoing head-note, and there is no evidence that he intended to physically convey the pistol in question to some other place than that at which he received it, or had even determined to consummate its purchase. Testimony which shows no more than that the accused received a pistol from the owner, who wished to sell it, and, while looking at it, was called off upon another matter, and stopped with the pistol in his hand, about twenty feet from the point where he obtained its manual possession, and then returned and handed the pistol back to the person who pro-posed to sell it, will not authorize a conviction.

DECIDED FEBRUARY 24, 1913.

Indictment for carrying pistol; from Randolph superior court—Judge Worrill. October 7, 1912.

*James W. Harris,* for plaintiff in error.

*J. A. Laing, solicitor-general, R. R. Arnold,* contra.

Russell, J. The purpose of the General Assembly in the passage of the act of 1910, supra, was to prevent the having or carrying of pistols or revolvers by any person (other than those excepted in the act) outside of his own home or place of business. But in using the words "to have or carry about his person" there is necessarily involved the idea that the inhibited condition shall have some degree of permanence, with a definite intent to convey the pistol from one place to another, and the act was never intended to reach a case where the having or carrying of the weapon was for the mere purpose of examination, with a view to a purchase, and was during the period of negotiation. If so, the General Assembly would have prohibited the sale of revolvers. Perhaps it would be wise to prohibit altogether the sale of pistols and revolvers, if there is no constitutional objection to such a statute. But evidently the legislature did not intend to do this, because it did not entirely prohibit the carrying of the weapons; it only attempted to regulate it by imposing a license fee and a bond upon those who might desire to carry such weapons; and the statute is not even directed against all of those who do not pay for license; for certain classes of citizens are permitted to carry them without a license. In *Strickland* v. *State,* 137 *Ga.* 12 (72 S. E. 265, 36 L. R. A. (N. S.) 115), Justice Lumpkin, speaking for the majority of the court, after referring to the familiar illustrations given by Blackstone, such as the law forbidding a layman to "lay hands" upon a priest, which was construed to include hurting him with a weapon, and the law declaring that "whoever draws blood in the streets should be punished," which was held not to apply to a surgeon who opened a vein of a person who fell in a fit in the street, and others, says "The act should receive a reasonable construction. Suppose that the owner of a pistol should accidentally drop it from the window of his dwelling to the street. A narrow and literal construction of the act might make it penal for him to pick it up and carry it into his house. It is lawful to sell pistols. But a similar construction might make it impossible for the carrier to deliver them to the dealer, or the dealer to deliver them to the customer. We will not anticipate that any such construction will be given, but one which will carry out the legislative purpose."

The judge charged the jury in the present case: "It matters not whether this was the defendant's pistol or not; if the evidence shows that this defendant received the pistol from some one else who was the real owner, and if he took that pistol in his manual possession, and was out of his home, and carried it around there on the ground, it makes no difference whether the pistol belongs to him or not; and even though he might have carried it but a short distance, it would be a violation of this statute. Or even if he kept it for a short time, it matters not for what purpose he procured it; if he carried it around in his manual possession, outside of his own home or place of business, without first taking out a license from the ordinary of Randolph county, you would be authorized in finding him guilty."

Under the evidence, this instruction virtually amounted to a direction of the verdict. We think it gave the statute too literal, strict, and narrow a construction.       *Judgment reversed.*