### 4932. COSPER *v.* THE STATE.

1. The question whether a statute is for any reason unconstitutional will not be certified to the Supreme Court when a determination of the issues involved can be reached without a decision of that question. Nor will a reviewing court pass upon the constitutionality of a statute unless it appears that the question was made in the court below and passed upon by the trial judge.

2. "The act approved August 12, 1910 (Ga. Laws, 1910, p. 134), entitled 'An act to prohibit any person from having or carrying about his person . . any pistol or revolver without first having obtained a license from the ordinary,' etc., should receive a reasonable construction, in accord with the purpose of the legislature in enacting it." *Jackson* v. *State,* 12 *Ga. App.* 427 (77 S. E. 371); *Strickland* v. *State,* 137 *Ga.* 1 (72 S. E. 260, 36 L. R. A. (N. S.) 115, Ann. Cas. 1913B, 323).

3. A criminal intent is an essential ingredient of crime; and while it may be presumed, as a matter of law, that one anticipates the natural, ultimate consequences of his act, the question of intention rests finally with the jury, and is not for the court.

4. One who finds a pistol on a public road, and carries it to his home solely

for the purpose of safe-keeping until it is called for by its owner, is not guilty of a violation of the act prohibiting the carrying of a pistol without a license.

DECIDED AUGUST 25, 1913.

Indictment for carrying pistol without license; from Heard superior court—Judge Freeman. May 6, 1913.

*S. Holderness,* for plaintiff in error.

*J. R. Terrell, solicitor-general,* contra.

RUSSELL, J. The facts are very brief. The State's witness saw the defendant carrying a pistol on a public road, going toward the defendant's home. He had it in his hand, openly and not concealed. He had no᾿ license authorizing him to carry a pistol. The defendant (who was a boy eighteen years of age) stated that on the day he met the witness (who was on his way from the house of the defendant's father) he saw a pistol in the middle of the road. He picked it up and carried it to his father's house, and did not know who was its owner. A day or two later Sam Cavender, who had lost a pistol, came to the defendant's house and identified it, and the defendant delivered the pistol to Cavender. The defendant stated that he did not himself own any pistol and had no intention of violating the law, but merely picked it up and preserved it for the owner.

1. Counsel for plaintiff in error seeks to question the constitutionality of the act of 1910 (Georgia Laws, 1910, p. 134). In our opinion the point which the learned counsel for plaintiff in error seeks to raise was settled by the ruling of the Supreme Court in *Strickland* v. *State,* 137 *Ga.* 1 (supra). But we shall not deal with the question of the constitutionality of the act as affecting the plaintiff in error. The question whether a statute is for any reason unconstitutional will not be certified by this court to the Supreme Court when a determination of the case can be reached without a decision involving the constitutionality of the law in question. *Wimberly* v. *Georgia Southern & Florida R. Co.,* 5 *Ga. App.* 263 (63 S. E. 29). Nor will a reviewing court pass upon the constitutionality of a statute unless it appears that the question was made in the court below and passed upon by the trial judge. *Griggs* v. *State,* 130 *Ga.* 16 (60 S. E. 103).

2. The court charged the jury that if they believed it to be true that the defendant picked the pistol up on the public highway and carried it on his person to his home (it being conceded that the

defendant had no license), he would be guilty under the law. As was said by Justice Lumpkin, in delivering the opinion of the court in the *Strickland* case, supra, "The act [forbidding the carrying of pistols without a license] should receive a reasonable construction." Following this ruling, in *Jackson* v. *State,* 12 *Ga. App.* 427 (77 S. E. 371), this court held that the statute "was not intended to prevent the manual possession of a pistol for such a length of time as is necessary to examine it with a view to its purchase, nor to penalize the act of one who, having a pistol in his hand for no other purpose than that of examination, might be temporarily called aside by some one wishing to speak to him." In the present case, if there had been no evidence but that in behalf of the State, the jury would have been warranted in convicting the accused. But the defendant made a statement, and it was the right of the jury, if they saw fit, to believe that statement. If they believed it, it was the right and duty of the jury to apply the rule of reason and the test of reasonableness to the circumstances under which the accused had the pistol in his possession, as well as to ascertain whether or not there was in fact any intent to commit a crime. The charge of the trial judge practically eliminated the defendant's statement from the case, and was a holding that, as a matter of law, one has no right to pick up a pistol lying in the public road, no matter what may be his purpose in so doing. Under the charge of the learned trial judge, the jury was obliged to convict the accused, even if they believed the defendant's statement.

The opinion of the judge who presided in this case is entitled to great consideration, because he is not only an upright magistrate, without fear and without reproach, but he is also a most erudite jurist; but still we can not concur in the view of the statute as presented in the instruction above quoted. As has been several times pointed out by this court (and the fact is also referred to by Justice Lumpkin in the *Strickland* case, supra), the *sale* of pistols in this State is not unlawful. There was a time when it was illegal to sell pistols in Georgia, but that law was repealed. It must be assumed that the legislature was cognizant of the history of prior legislation upon this subject at the time the act of 1910 was passed. In the opinion of a majority of the Supreme Court, the legislature did not intend to prevent the carriage or delivery of a pistol from the place of sale to the home of the purchaser. The purpose of the

carrying must be taken into consideration, and there must be some indication that the carrying is more or less habitual. *Jackson* v. *State,* supra. Of course, it would never do to hold otherwise than that evidence of carrying on one occasion would be sufficient to authorize the conclusion that the accused habitually carried the pistol identified by the proof as having been carried on that occasion without a license. But we are not prepared to hold that if in any case it should plainly appear that the carrying was a mere temporary incident, due to an emergency of some kind or absolutely necessary for the transportation of the property and its preservation, or to prevent a breach of the peace—perhaps a homicide, one who could show a good reason for not having taken out a license, in the fact that he had never owned a pistol, should be subjected to punishment for failure to take out a license.

3. In the offense of carrying a pistol without taking out the license required by law, as in every other act denounced by law as criminal, the culpability of the accused must be determined by the intent with which the act was done. True, as a general rule, the law supplies proof of intent by the presumption that every person intends the legitimate consequences of his act, but this presumption may be rebutted, either by evidence or by the defendant's statement at the trial, if the jury see proper to believe it. It is elementary that to constitute a crime, there must be "a union or joint operation of act and intention, or criminal negligence." Penal Code, § 31. Not only must an act be done which is forbidden by law, but there must be operating in addition to this and in the act itself an intention to violate the law, or criminal negligence. Having proved the commission of an act forbidden by law, the legal presumption that the apparent violation of the law was wilful and intentional fortifies the prosecution and completes the case in behalf of the State. But this does not preclude the possibility of the defendant's showing that he had no intention of violating the law. Especially is this true in those cases where the gravamen of the offense consists in the particular intention with which the act was done. In all such cases the question as to the intention is one wholly for the jury. We are of the opinion that the same rule should be applied in a case such as this, where the gravamen of the offense is the failure to obtain permission to do the act which, if the legal requirements had been complied with, would have been permissible. In

other words, if the defendant in the present case, being over eighteen years of age, had applied for a license and had complied with the other statutory requirements, he could have obtained one. Had he obtained the license, his carrying the pistol would not have been illegal. Can it be said that if the jury are satisfied, from the circumstances, that there was no reason why he should have taken out a license to carry a pistol, he should be punished, forsooth, because he had not obtained a license? In forbidding persons other than those excepted to carry pistols without first obtaining a license, it must be assumed that the legislature had in mind one who intended to carry a pistol. If one intends to carry a pistol and does carry it, without obtaining a license, he is guilty of a violation of the law now in question, but if one who has not obtained a license, for the reason that he has never intended to carry a pistol, is forced by some exigency (the stress of which the jury is to consider as illustrative of his intention) to remove a pistol from an unsafe to a safe place, or to prevent its unlawful use, the accused should not be convicted. It is in every case for the jury, from the circumstances of the case, to determine whether the accused intended to carry a pistol without obtaining a license. Of course, if nothing more appeared than that he had carried a pistol and had not obtained a license, or if it appeared that the exigency was not such as satisfactorily to negative the assumption that he intended to violate the law, he would properly be convicted. But if, on the other hand, the defendant, either by proof or by his statement if credible, rebuts the presumption of criminal intention, arising from proof that he carried the pistol, an acquittal would be authorized.

4. One who finds a pistol on a public road, and carries it to his home solely for the purpose of safe-keeping until it is called for by its owner, is not guilty of a violation of the act prohibiting the carrying of a pistol without a license; and it is error to instruct the jury that under such a state of facts they should convict the accused. And for this reason, in our opinion, it was error in the present case to tell the jury, in effect, that they were by law required to convict the accused regardless of his statement. Of course, it can never be known whether or not the jury would have believed the defendant's statement, but they *might* have believed it; and if his statement is the truth of the case, he was not guilty, although he had not obtained the license required by law, for there never was a

20

time when he carried or intended to carry a pistol within the true meaning and reasonable intendment of the act of 1910.

The word "carry" sometimes involves the idea of habitude, and, as was pointed out in the *Jackson* case, supra, there must be more than a mere temporary handling of the pistol to constitute the offense defined in the act of 1910. When we consider the intention of the legislature in passing this statute, as well as the ruling of the Supreme Court in *Modesette* v. *State,* 115 *Ga.* 582 (41 S. E. 992), in which it was held that one who comes into possession of a pistol at a public gathering is not guilty of carrying the weapon to the gathering (which ruling was followed in *Culberson* v. *State,* 119 *Ga.* 805 (47 S. E. 175), and *Amorous* v. *State,* 1 *Ga. App.* 313 (57 S. E. 999)), and bear in mind the reasoning in the *Strickland* case, supra, and the authorities therein cited, especially *Hill* v. *State,* 53 *Ga.* 472, it is apparent that the right to carry arms, guaranteed by the constitution (the exercise of which may be regulated but can not be prohibited), is one of habitude. That this is true has been universally admitted in those rulings in which it is held that proof of concealment of a pistol for but a moment is sufficient to authorize a conviction, because one carrying a pistol should habitually carry it openly and fully exposed to view, so that others having his person in view will at all times know that the pistol carrier is armed. Certainly the grant of a license for a designated term involves the thought that the applicant for the license intends to obtain the right to carry a pistol (though openly) as often as he desires during the life of his license, and to legalize the habit (if he has the habit) of carrying the pistol. For this reason the statement of the accused that he did not own a pistol and did not intend to violate the law, if credible to the jury, was of such legal significance that the jury should have been permitted at least to consider it.　　　　　　　　　　　　*Judgment reversed.*